**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Artur Hugon, for himself and all statutory beneficiaries of Tyler Hugon, deceased, including Abbe Hugon, natural mother of Tyler Hugon, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>AmShield Insurance Company, a Missouri company, Black Corporations I-X,<br><br>Defendants. | No. CV-25-01236-PHX-SMB<br><br>**ORDER** |

Pending before the Court are Plaintiffs' Motion for Summary Judgment (Doc. 15) and Defendant's Cross-Motion for Summary Judgment (Doc. 18). The Motions are fully briefed. The Court **denies** Plaintiffs' Motion and **grants** Defendants' Cross-Motion for the reasons below.

## I.     BACKGROUND

The parties do not dispute the following facts. On March 9, 2024, Tyler Hugon, son of Artur and Abbe Hugon, died in an automobile crash with an uninsured driver. (Docs. 15 at 2; 18 at 3.) Abbe Hugon maintained an insurance policy with AmShield that contained uninsured motorist ("UM") coverage for two vehicles: a 2014 Honda Pilot EX and a 2023 Lexus IS 350 F. (Docs. 15 at 2; 18 at 2.) The Policy provided UM coverage for each vehicle, with limits of $250,000 for each person and $500,000 for each accident. (Docs. 15 at 2; 18 at 2.)

Defendant recognized Tyler as an insured under the Policy and tendered $250,000

to Abbe.  (Docs. 15 at 2; 18 at 4.)  Plaintiffs accepted the UM coverage, but contested Defendant owed an additional $250,000 in UM coverage.  (Docs. 15 at 2; 18 at 4.)  In other words, Plaintiffs argued they were entitled to stack their UM policies.  Defendant denied the additional claim request, arguing that the Policy prevented such stacking.  (Docs. 15 at 2–3; 18 at 4.)

On April 14, 2025, Plaintiffs filed a Complaint for declaratory relief seeking a judicial determination that: (1) Defendant "did not strictly comply with A.R.S. § 20-259.01(H)"; and (2) Defendant's "Policy affords Plaintiffs the right to collect under two UM coverages each with $250,000 limits."  (Doc. 1 at 6.)  Plaintiffs also sought applicable attorney fees.  (*Id.*)  Defendant answered and filed a Counterclaim, seeking a judicial determination that the Policy does not afford any additional UM coverage beyond the $250,000 Plaintiffs received.  (Doc. 10 at 9.)  Defendant also requested applicable attorney fees.  (*Id.* at 9–10.)

## II.     LEGAL STANDARD

Summary judgment is appropriate in circumstances where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of a case under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes are genuine when the evidence could allow a reasonable jury to find in favor of the nonmoving party.  *Id.*  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by showing "that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)–(B).  Additionally, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith*

- 2 -

*Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 255. Additionally, the Court does not make credibility determinations or weigh the evidence. *Id.* "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Id.*

The burden initially falls on the movant to demonstrate the basis for a motion for summary judgment and "identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If this initial burden is not met, the nonmovant does not need to produce anything even if they would have the ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). However, if the initial burden is met by the movant, then the nonmovant has the burden to establish that there is a genuine issue of material fact. *Id.* at 1103. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Zenith Radio Corp.*, 475 U.S. at 586. Bare assertions alone do not create a material issue of fact, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

## III.    DISCUSSION

Plaintiffs argue there is no genuine dispute of material fact that Defendant did not strictly comply with § 20-259.01(H), and thus they are entitled to stack their UM coverage. (Doc. 15 at 3.) Defendant argues that there is no genuine dispute of material fact that Plaintiffs cannot stack their UM coverage because Defendant did not violate § 20-259.01(H). (Doc. 18 at 2.) Accordingly, the key consideration here is Defendant's adherence to § 20-259.01(H). The Court holds that there is no genuine dispute that Defendant complied with subsection (H).

### A. Section 20-259.01(H)

Section 20-259.01(H) is "known as the 'anti-stacking' provision of Arizona's Uninsured/Underinsured Motorist Act" (the "UMA"). *Franklin v. CSAA Gen. Ins. Co.*,

532 P.3d 1145, 1147 (Ariz. 2023).  In other words, subsection (H) is the "sole means by which insurers may limit [UM coverage] stacking."  *Id.* at 1151.  Subsection (H) provides:

> If multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy or coverage, selected by the insured, shall be applicable to any one accident. If the policy does not contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection, within thirty days after the insurer receives notice of an accident, the insurer shall notify the insured in writing of the insured's right to select one policy or coverage.

A.R.S. § 20-259.01(H).[1]

In *Franklin*, the Arizona Supreme Court interpreted this exact subsection and delineated what an insurer must do to comply therewith.  To limit stacking under subsection (H), insurers must "(1) expressly and plainly limit stacking in the policy and (2) satisfy the notice requirement informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident."  *Franklin,* 532 P.3d at 1148 (quoting § 20-259.01(H)).  "If an insurer does not satisfy both requirements, the insurer cannot limit stacking."  *Dorazio v. Allstate Fire & Cas. Ins. Co.*, No. CV-23-00017-PHX-KML, 2025 WL 1652003, at *2 (D. Ariz. June 11, 2025).

Therefore, the Court must first look to the Policy and then to any written notice to determine whether Defendant properly limited Plaintiffs from stacking UM coverage.

**B.  The Policy Plainly Disavows Stacking**

The first question is whether Defendant's Policy includes "unambiguous language plainly disavowing the possibility of stacking."  *Franklin*, 532 P.3d at 1148.  Defendant argues in the affirmative, pointing to the Policy's "Limit of Liability" provision, which states:

> **Limit of Liability**
> **A.** The Limit Of Liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident.

---

[1] The parties do not contest that subsection (H) applies here.  (Docs. 15 at 4; 18 at 7.)

> . . . .
> This is the most we will pay regardless of the number of:
> **1.** "Insureds";
> **2.** Claims made;
> **3.** *Vehicles or premiums shown in the Declarations*; or
> **4.** Vehicles involved in the accident.

(Docs. 19 at 2 ¶ 4; 19-1 at 27 (emphasis added).)

Accordingly, the Policy first states that Defendant will only pay the maximum liability limit for each covered person in one accident. Here, that maximum is $250,000. (Docs. 19 at 2 ¶ 3; 19-1 at 2.) Importantly, the Policy then expressly states that this number is not altered by the number of "[v]ehicles or premiums shown in the Declarations." (Doc. 19-1 at 27.) Restated, the $250,000 maximum liability coverage does not change even if there are multiple vehicles covered in the Policy. The Court finds that this language unambiguously disclaims UM stacking. Plaintiffs concede this point. They acknowledge that Defendant's Policy included "the requisite language that would limit stacking of multiple policies containing UM coverage." (Doc. 21 at 2 n.1 (emphasis omitted).) Therefore, the Court finds there is no genuine dispute of material fact that Defendant expressly and plainly limited UM stacking in the Policy.

**C. The Written Notice Informed Plaintiffs They Could Choose One Policy or Coverage**

The second question is whether the insurer satisfied § 20-259.01(H)'s notice requirement. This means, in addition to unambiguously limiting stacking in the Policy, the insurer must "inform 'the insured of the insured's right to select one policy or coverage,' either in the policy itself or in writing 'within thirty days after the insurer receives notice of the accident.'" *Franklin*, 532 P.3d at 1148 (citation modified) (quoting § 20-259.01(H)).

To this point, Defendant does not contend that the policy itself satisfies the notice requirement. Therefore, the parties focus on the sufficiency of Defendant's April 4, 2024, written correspondence.[2] That correspondence stated:

---

[2] Defendant issued this correspondence within the applicable thirty-day period.

- 5 -

We wish to inform you that, in the future, if a claim is made for either Uninsured Motorist (UM) or Underinsured Motorist (UIM) coverage for this accident and more than one AmShield or Shelter policy or coverage applies, the coverage is limited to only one coverage under one policy. Arizona law gives the insured the right to select which vehicle"s [sic] *coverage limit* applies to the accident. We will be available to discuss this selection if a UM or UIM claim is asserted.

(Docs. 19 at 3 ¶ 8; 19-1 at 41–42 (emphasis added).)

Plaintiffs argue that Defendant's correspondence "did not strictly comply with subsection (H) because it did not notify its insured of the right to select one policy or coverage." (Doc. 15 at 5.) Specifically, Plaintiffs take issue with Defendant's directive to select one "coverage limit" rather than one "coverage," as prescribed by subsection (H). *See* § 20-259.01(H) ("[T]he insurer shall notify the insured in writing of the insured's right to select one policy or *coverage*." (emphasis added).) Thus, Plaintiffs' position rests on semantics.

Plaintiffs state that Black's Law Dictionary defines "coverage" as: "Inclusion of a risk under an insurance policy; the risks within the scope of an insurance policy." (Doc. 15 at 5.) But, according to Plaintiff, "coverage limit" only means a "restriction of the inclusion of the risk"—"not the inclusion of the risk itself." (*Id.*) In short, "coverage limit" is a number (i.e., $250,000), while "coverage" is the specific risk insured against (i.e., injury or death at the hands of an uninsured motorist). (*Id.*) According to this logic, Plaintiffs conclude that "[b]y notifying Abbe of the right to select which vehicle's 'coverage limit' applies, AmShield did not notify her of the right to select one 'coverage.'" (*Id.*) Therefore, Defendants' correspondence failed to comply with subsection (H) because "[c]overage means coverage." (*Id.* at 6.) The Court finds Plaintiff's pedantic approach unreasonable.

Plaintiffs' interpretation "conflate[s] textualism with literalism." *See State v. Serrato*, 568 P.3d 756, 760 (Ariz. 2025). "Literalism, also known as strict constructionism, involves 'a narrow, crabbed reading of a text.' Textualism, on the other hand, 'does not limit one to the hyperliteral meaning of each word in the text.'" *Id.* (quoting Antonin Scalia

& Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 355–56 (2012)). Accordingly, Arizona courts read statutes "as a cohesive whole" to inform the meaning of a word. *Id.* Reading subsection (H) in context, it is evident that "coverage" includes "coverage limits."

As an anti-stacking provision, subsection (H) is primarily concerned with coverage limits. *See Am. Fam. Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 (Ariz. 2012). Stacking occurs "when an insured has purchased multiple coverages from one insurer against the same event and *seeks to stack the limits* provided by any single coverage." *Rashid v. State Farm Mut. Auto. Ins. Co.*, 787 P.2d 1066, 1068 n.2 (Ariz. 1990) (emphasis omitted and added). To prevent this tactic, subsection (H) must permit insurers to prohibit insureds from stacking coverage limits. Subsection (H) states that an "insurer may *limit the coverage* so that only one policy or coverage, selected by the insured, shall be applicable to any one accident." § 20-259.01(H) (emphasis added). According to Plaintiffs' hyper literal construction, "limit the coverage" means limit the insured risk (i.e., coverage) *not* the insured amount (i.e., the coverage limit). Such an interpretation would undermine the very purpose of subsection (H). Thus, in order to prevent stacking, subsection (H)'s use of "coverage" must include that coverage's limits. An alternative construction would contradict years of Arizona Supreme Court precedent. *See Franklin*, 532 P.3d at 1148 (interpreting § 20-259.01(H) as an anti-stacking provision); *Am. Fam. Mut. Ins. Co.*, 277 P.3d at 196 (same); *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 897 P.2d 631, 633 (Ariz. 1995) (interpreting an earlier version of the provision as allowing insurers to prohibit stacking); *Rashid*, 787 P.2d at 1068 n.2 (same). Therefore, in context, subsection (H)'s use of "coverage" includes coverage limits.

Defendant's correspondence complies with this construction. Defendant's correspondence informed Plaintiffs that "Arizona law gives the insured the right to select which vehicle's [sic] coverage limit applies to the accident." (Doc. 19 at 41–42.) This language satisfies subsection (H)'s requirement to inform "the insured of the insured's right to select one policy or coverage" because "coverage" in this context includes coverage

limits. Additionally, there is no evidence that Defendant's use of "coverage limit" failed to fully apprise Plaintiffs of their right to choose a UM coverage. The opposite is true. In response to Defendant's correspondence, Plaintiffs selected the UM coverage limit of $250,000 assigned to the Lexus. (Docs. 19 at 4 ¶ 12; 19-1 at 90.) At bottom, informing an insured of their right to select a vehicle's coverage limit will always lead them to select a UM coverage because one cannot select a coverage limit without also selecting a coverage.

Accordingly, the Court finds that there is no genuine dispute of material fact that Defendant complied with subsection (H)'s notice requirement.

## IV.    CONCLUSION

Given the foregoing, the Court finds there is no genuine dispute of material fact that Defendant complied with § 20-259.01(H). Therefore, as a matter of law, Plaintiffs are not entitled to stack their UM coverages.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 15) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. 18) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff accordingly.

Dated this 5th day of March, 2026.

Honorable Susan M. Brnovich
United States District Judge

- 8 -